IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JOHN D. WOSOTOWSKY,**

    **Plaintiff,**

v.                                                                                             Civil Action No. 3:14cv68

**UNKNOWN DOE DEFENDANT I;**
**UNKNOWN DOE DEFENDANT II;**
**UNKNOWN DOE DEFENDANT III;**
**UNKNOWN DOE DEFENDANT IV;**
**UNKNOWN DOE DEFENDANT V; and**
**UNKNOWN DOE DEFENDANT VI,**
Unknown Correctional Officers employed by the
Board [sic] of Prisons at USP Hazelton – Satellite
Camp,

    **Defendants.**

## ORDER DISMISSING AMENDED COMPLAINT WITHOUT PREJUDICE

### I. Procedural History

On June 26, 2014, the Plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. §1983 against only former defendant Warden Terrence O'Brien. Because the Plaintiff is a federal inmate pursuing claims against a federal official, the case was construed as a Bivens[1] civil right action. The Plaintiff was granted permission to proceed as a pauper on July 17, 2014, and his initial partial filing fee was paid on September 8, 2014. On September 9, 2014, the undersigned conducted a preliminary review of the complaint, found that summary dismissal was not appropriate, and directed the Clerk to issue a summons for the then-sole defendant, Warden O'Brien. A summons was issued, and on November 12, 2014, the Warden filed Motion to Dismiss with a supporting memorandum. On November 17, 2014, the Plaintiff was issued a

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities.

Roseboro Notice. On January 26, 2015, the Plaintiff filed his opposition to the Defendant's Motion to Dismiss, styled Enumerated Motion to Proceed on Merits of Stated Action and Oppose Defendants Attempt in Dismissal.

Both parties consented to have this case referred to the undersigned to conduct all further proceedings. Accordingly, by Order entered by the undersigned on February 9, 2015, the defendant's motion to dismiss was granted and the complaint was dismissed with prejudice for the failure to state a claim upon which relief could be granted.

On July 6, 2015, the plaintiff filed a *Pro Se* Motion for Leave to File an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1) and (2), attaching a declaration and an amended complaint which named defendants "Five Unknown Correctional Officers Employed by the Board [sic] of Prisons at USP Hazelton - Satellite Camp." The case was reopened. By Order entered October 21, 2015, Plaintiff's motion was granted;[2] he was given sixty days to file his amended complaint and the Clerk of Court was directed to send him a Bivens packet for use in filing his amended complaint. On December 14, 2015, Plaintiff filed his Amended Complaint.

## II. The Amended Complaint

The Plaintiff, formerly a prisoner at USP Hazelton - Camp, located in Bruceton Mills, West Virginia, is now incarcerated at FCI Morgantown in Morgantown, West Virginia. In the amended complaint, as in the original complaint, the Plaintiff raises a claim of deliberate indifference to his serious medical needs, alleging that his Eighth and "possibly Fourteenth" Amendment rights were violated by the defendants[3] on the nights of April 30 and May 1, 2012

---

[2] In the Order, plaintiff was specifically advised that while a plaintiff may name a "John Doe" defendant when a defendant's identify is unknown, a district court is not required "to wait indefinitely" for the plaintiff to provide the court with the defendant's true identity. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

[3] Dkt.# 1 at 7 and Dkt.# 56 at 7.

while he was incarcerated at USP Hazelton – Satellite Camp.[4] The Plaintiff alleges "the facts of the case are basically the same as the pleadings, memorandum and all filings – currently with the court from previous diamissed [sic] case against the warden. Also attached a five page memorandum in support and attachments previuosly [sic] cited inquiries."[5]

Plaintiff alleges that he "was compelled to sleep in an upper bunk"[6] even though he was fifty-one years old, overweight, suffered from high blood pressure; a pre-existing prostate condition that required frequent urination at night,[7] and, as an alcoholic and gambling addict, suffered from shakiness, excessive sweating, and depression.[8] On April 30, 2012, at approximately 12:44 a.m., the Plaintiff alleges he fell from his upper bunk onto the concrete floor.[9] The Plaintiff contends he injured his right arm to the point that it was "dangling' in appearence [sic] of seperation [sic] . . . [and] [w]itnesses hear a cracking sound when he hit the floor. He alleges he was also bleeding from the nose and forehead.[10] He alleges that he lay on the floor "for close to 5 hours" until he was taken to a hospital.[11] According to the Plaintiff's complaint he was treated for the following:

> (1) gash to the forehead requir[ing] five stitches; (2) severely dislocated right shoulder; (3) closed head injury with bleeding from nose; (4) right frontal sinus fracture; (5) left radial head fracture; (6) Pneumocephalas

---

[4] Dkt.# 56 at 7.

[5] Id. at 7 – 8.

[6] Dkt.# 56-1 at 2.

[7] Id. at 3.

[8] Dkt.# 1-1 at 14-15.

[9] Dkt.# 56-1 at 3.

[10] Id.

[11] Dkt.# 56-3 at 2.

[sic]; (7) right proximal humerus fracture; and (8) acute pain due to trauma.[12]

The Plaintiff remained in the hospital until May 2, 2012.[13] He alleges that he was instructed to follow up with Dr. Rosen, a neurosurgeon, within two weeks of the incident but that that did not happen.[14] The Plaintiff alleges a CAT scan was performed on June 25, 2012.[15] He contends that although a visit with Dr. Rosen was approved for September 15, 2012, the appointment, and then a rescheduled appointment were both cancelled and he never did see the neurosurgeon.[16]

The Plaintiff alleges that he received insufficient care for his shoulder between May 6, 2012, and September 25, 2012.[17] The Plaintiff agrees with the BOP that he was seen by Dr. Vasalakis, a staff orthopedic specialist, on May 9, 2012, and later on September 29, 2012.[18] However, the Plaintiff contends these visits were "sporadic and vague" and the first visit only lasted about two minutes, including sling instructions.[19] The Plaintiff contends that two x-rays of his shoulder, taken on May 22, 2012, and September 25, 2012, were found to be "abnormal."[20]

The Plaintiff contends "[t]he lack of attention given" has resulted in the "permanent lifelong irreparable damage" of his right shoulder.[21]

---

[12] Dkt.# 56 at 9.

[13] Dkt.# 56-3 at 5.

[14] Id. at 10.

[15] Dkt.# 56-3 at 6; Dkt.# 56-3 at 5.

[16] Dkt.# 1-1 at 11.

[17] Dkt.# 56-3 at 10.

[18] Id.

[19] Id.

[20] Id.

[21] Dkt.# 1-1 at 12.

In conclusion, the Plaintiff claims his injures were based on "carelessness" and "deliberate indifference" by the Defendant to the Plaintiff's alleged injuries.[22] Finally, the Plaintiff contends that immunity should not apply in this case.[23]

As relief, the Plaintiff seeks a jury trial "in full accord with his seventh amendment [sic] constitutional right, in quest of actual damadges [sic], punitive damages and [unspecified] injunctive relief." [24]

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. § 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[25] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504

---

[22] Id. at 17.

[23] Id. at 18.

[24] Dkt.# 56 at 9.

[25] Id. at 327.

U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

As Plaintiff has been previously advised, a plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

Here, despite clear instructions in the October 21, 2015 Order granting his motion to amend his complaint that the identities of the defendants must be determined for his case to go forward, and despite being given sixty additional days in which to determine those correctional officers' names,[26] plaintiff has still not provided their identities to the Court. The plaintiff has had more than ample time to identify all the defendants in this action. Moreover, beyond adding multiple "Unknown Doe" "John Doe" defendants to the caption of his case, he has provided little information as to how or when each individual John Doe defendant violated his constitutional rights. Accordingly, the complaint against the six John Doe defendants should be dismissed.

## V. Conclusion

For the reasons described above, the Plaintiff's Amended Complaint (Dkt.# 56) is **DISMISSED without prejudice** to his right to refile a Second Amended Complaint, once he determines the identities of the unknown John Doe defendant correctional officers. It is further **ORDERED** that this civil action be **DISMISSED** and **STRICKEN** from the active docket of this Court.

---

[26] See Dkt.# 54, FN1 at 2.

Should the Plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is **ADVISED** that he must file a notice of appeal with the Clerk of this Court within sixty days after the date of the entry of the judgment order.

**IT IS SO ORDERED**.

The Clerk is directed to transmit a copy of this order to the *pro se* plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is **DIRECTED** to enter judgment on this matter.

DATE: December 28, 2015

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE